GLICKSTEIN, Judge.
This is an appeal from an order which dismissed Bass Aviation from the action because of lack of in personam jurisdiction and insufficient minimum contacts by that defendant with the State of Florida. We reverse and remand.
We held in Cosmopolitan Health Spa, Inc. v. Health Industries, Inc., 362 So.2d 367, 368 (Fla. 4th DCA 1978):
In order to allow the assertion of in personam jurisdiction over a defendant outside the territorial reach of the courts of this state, a burden is imposed on the plaintiff to plead sufficient material facts to establish a basis for the exercise of such jurisdiction. If such jurisdiction over the person of the defendant is properly challenged by affidavit, the plaintiff must sustain its assertions by affidavit or other proof and may not rely on a mere reiteration of the allegations contained in the complaint. Georgia Savings and Loan Service Corp. v. Delwood Estates, Inc., 315 So.2d 237 (Fla. 1st DCA 1975). See also Dublin Company v. Peninsular Supply Co., 309 So.2d 207 (Fla. 4th DCA 1975). (Emphasis in original.)
Applying the foregoing requirements to the present case, we conclude that the allegations of the plaintiffs’ complaint and their subsequent proof were sufficient to meet the following test expressed by the United States Supreme Court and followed by the courts of Florida in Lacy v. Force V Corp., 403 So.2d 1050, 1054 (Fla. 1st DCA 1981):
Unquestionably the single most important factor to be considered is whether “the defendant’s conduct and connection with the forum ... are such that he should reasonably anticipate being haled into court there _” World-Wide Volkswagen Corp. v. Woodson, 444 U.S. [286] at 297, 100 S.Ct. [559] at 567, 62 L.Ed.2d at 501. It is essential that this circumstance be considered from the perspective of the defendant — not from that of the plaintiff. See Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 43 L.Ed.2d 683 (1977). The reasonable foreseeability factor is frequently applied to force a nonresident defendant to answer a suit within the forum if it “purposefully avails itself of the privilege of con *449 ducting activities within the forum .... ” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958).
Paragraph 13 of the complaint alleged:
(13) Upon information and belief, Bass leased Learjet N211MB to persons and organizations residing and operating in the state of Florida, and leased and operated other aircraft in the state of Florida. Prior to March 3, 1980, Bass delivered Learjet N211MB into the custody of Glenn Charles Moyer with the knowledge that he would fly N211MB to various places within and without the United States of America including the state of Florida.
Bass Aviation moved to dismiss the complaint for lack of jurisdiction over its person and attached the affidavit of its president, attesting to the facts that Bass was a Mississippi corporation whose principal place of business is in Fairhope, Alabama;[1] that it neither has nor had officers, agents, employees, jobbers, wholesalers or distributors in Florida; that it did not nor had not placed advertising in any publications in Florida nor sent direct mail nor broadcast advertising therein; that it does or did not use Florida banks as lenders; that it did not lease the aircraft in question to anyone in Florida, directly or indirectly; that it did not operate or maintain the subject aircraft here; that it had none of its products used or consumed here; that the lease for the aircraft was executed in Fairhope; that the aircraft left Fairhope for Denver; and that the pilot only mentioned Denver, Chicago and the northeast United States.
The affidavit did not address most of the allegations of paragraph 13 of the complaint but conflicted with the allegation therein that Bass knew the aircraft was going to be flown to Florida and without the U.S. The complaint had also alleged the alleged unairworthy aircraft flew from Miami to Haiti where it crashed in the mountains on March 3, 1980 killing the occupants.
The deposition of Bass’ president revealed two discrepancies with his affidavit; namely, that the pilot had told him he would be flying from the northeast to Florida and that Bass had advertised in 1979 and 1980 in Florida pursuant to a written agreement with A/C Flyer, whose office was then, according to the printed agreement, in Miami. The deposition further reflected facts relevant to the jurisdictional inquiry. The subject aircraft was leased for seven days on February 29, 1980, by Bass to Titanic Aircraft Sales and Service, Ltd., a Bahamian corporation operating in Fort Lauderdale. Bass had previously entered into similar leases with the same party; and Mr. Bass testified as to another lease for other aircraft with another party operating in Fort Lauderdale. A long-term lease with this other party — for ten years commencing in late 1979 — reflects delivery to be in Fort Lauderdale; and the record reflects correspondence and invoices directed to Fort Lauderdale.
The statement of facts in the main brief of appellants, Hernandez, alleges that the certificate held by Bass which was required by Part 135 of the Federal Aviation Regulations was used by other entities who were renting or leasing aircraft from Bass, including a party in Fort Lauderdale. Ap-pellees’ brief did not dispute this fact.
In our opinion the trial court erred in not concluding that Bass, should have reasonably anticipated being haled into court.
LETTS, J., concurs.
ANSTEAD, C.J., dissents with opinion.

. Fairhope is on the east side of Mobile Bay, west of Pensacola, Florida.