657 So.2d 939 (1995)
TOBACCO MERCHANTS ASSOCIATION OF the UNITED STATES, Appellant,
v.
Norma R. BROIN, et al., Appellees.
No. 94-1490.
District Court of Appeal of Florida, Third District.
July 12, 1995.
*940 Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel and David L. Ross and Christopher L. Kurzner, Miami, for appellant.
Stanley M. Rosenblatt and Susan Rosenblatt, Miami, for appellees.
Before HUBBART, COPE and GREEN, JJ.
GREEN, Judge.
The Tobacco Merchants Association ("TMA") appeals a non-final order of the trial court denying TMA's motion to dismiss for lack of personal jurisdiction. We reverse.
TMA is a non-profit corporation organized under the laws of Delaware whose principal place of business is in New Jersey. It is essentially a "clipping service" which collects information about the tobacco industry from public sources such as newspapers, government agencies and computer network databases and directly disseminates such information to its subscribers.[1] TMA also publishes several different newsletters directed to the interests of its members. Its members represent all sectors of the tobacco industry including growers, manufacturers, suppliers, leaf dealers and product distributors, as well as securities firms and management consultants. According to the affidavit filed in support of its motion to dismiss, TMA does not do any lobbying on behalf of the tobacco industry, any advertising or promotions of tobacco products nor does it do any scientific research on or for the tobacco industry. Its newsletters do not carry any advertising for tobacco products.
The appellees in this case are former or current flight attendants who never regularly smoked cigarettes themselves but who have allegedly sustained injuries from exposure to passive or "second hand" smoke in the course of their employment aboard airplanes. The flight attendants, now certified as a class, sued numerous defendants (TMA included) for strict liability, implied warranty, negligence, fraud and misrepresentation and conspiracy to misrepresent and to commit fraud.[2]
In the instant case, the flight attendants relied on sections 48.181(3) and 48.193(1)(b), Florida Statutes (1991) as the basis for long-arm jurisdiction over TMA. Section 48.181(3) deems a person, firm or corporation *941 to be engaged in substantial activities and conducting business in this state if tangible or intangible personal property is sold, consigned or leased through brokers, jobbers, wholesalers or distributors. Section 48.193(1)(b) authorizes the exercise of long-arm jurisdiction for the commission of a tortious act within the state. Their second amended complaint also alleged that TMA engaged in promotions, lobbying, research, legislative and political activities related to the tobacco industry.
TMA filed a motion to dismiss contesting the allegations in the second amended complaint concerning personal jurisdiction. In support of its motion, TMA filed the sworn affidavit of its president, Mr. Farrell Delman, which averred that TMA has no officers, employees or agents in the state of Florida, or a Florida office. The affidavit further averred that TMA does not operate, conduct or transact any business in Florida or own any real property in Florida. In their motion in opposition, appellees relied on the "four corners of the second amended complaint" and did not produce any evidence to rebut the assertions contained in this affidavit other than to submit a list of people who had contacted TMA for specific information or to get on its mailing list. Further, there was a complete absence of record evidence of the commission of a tort in the state of Florida by TMA. The denial by the trial court of TMA's motion to dismiss prompted this appeal.
In determining whether a party is subject to in personam jurisdiction in this state, the trial court must make two separate inquiries: 1) whether sufficient facts have been alleged to bring the cause within Florida's long-arm statute; and if so, 2) whether there have been sufficient minimum contacts with Florida to satisfy federal constitutional due process requirements. Doe v. Thompson, 620 So.2d 1004 (Fla. 1993); Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989); Pluess-Staufer Indus., Inc. v. Rollason Eng'g & Mfg., Inc., 635 So.2d 1070 (Fla. 5th DCA 1994); Fleming & Weiss, P.C. v. First Am. Title Ins. Co., 580 So.2d 646 (Fla. 3d DCA 1991).
There is a specific procedure set out in Venetian Salami for determining the sufficiency of allegations asserting jurisdiction under the long-arm statute. A defendant wishing to contest jurisdiction must file a legally sufficient affidavit in support of his position. "The burden is then placed upon the plaintiff to prove by affidavit the basis upon which jurisdiction may be obtained." Venetian Salami, 554 So.2d at 502; AG Rotors, Inc. v. Haverfield Corp., 585 So.2d 429 (Fla. 3d DCA 1991).[3] If no such sworn proof is forthcoming from the plaintiff as to the basis for jurisdiction, the trial court must grant the defendant's motion to dismiss.[4]Williams v. Martin, 595 So.2d 164, 165 (Fla. 4th DCA 1992). If the plaintiff files a counter-affidavit raising conflicting facts, the trial court should then hold a limited evidentiary hearing to resolve any disputed facts relating to jurisdiction. Venetian Salami, 554 So.2d at 503.
It seems clear that by clarifying a procedure already adopted by the various district courts of appeal, cf. W.C.T.U. Ry. Co. v. Szilagyi, 511 So.2d at 727; Aminoff & Co. v. Storrington Corp., 503 So.2d 1290 (Fla. 2d DCA 1987); Jones v. Jack Maxton Chevrolet, Inc., 484 So.2d 43 (Fla. 1st DCA 1986); Newton v. Bryan, 433 So.2d 577 (Fla. 5th DCA 1983); Elmex Corp. v. Atlantic Fed. Saving and Loan Assoc. 325 So.2d 58 (Fla. 4th DCA 1976), the Florida Supreme Court evidently intended the parties to state those facts *942 which they are prepared to swear are the basis of their respective positions. The trial court then reviews the affidavits, harmonizes them to whatever extent is possible and thereafter makes a decision based upon facts which are essentially undisputed. Venetian Salami, 554 So.2d at 503. Thus, the Florida Supreme Court appears to have envisioned a procedure focusing more on the parties' understanding of the facts of the case, which by this point in the action should be more developed than the bare allegations of the complaint, with correspondingly less emphasis on the parties' characterizations of each other's allegations. As an example of this, the supreme court in Conley v. Boyle Drug Co., 570 So.2d 275 (Fla. 1990) stated: "Ms. Conley has failed to offer any affidavits or other proof to refute the cross-petitioner's challenge to her personal jurisdiction allegations and, thus, has failed to establish facts necessary to support the court's exercise of personal jurisdiction over them under section 47.16." Id. at 288-289 (emphasis added).
In the instant case, TMA's undisputed affidavit that it had no officers, employees or agents in Florida; no real property in Florida; no offices in Florida; and conducted no business in Florida through brokers, jobbers, wholesalers or distributors or otherwise, and that it did not engage in promotions, lobbying, research, or legislative and political activities was legally sufficient to contest plaintiffs' jurisdictional allegation raised in the second amended complaint. The plaintiffs' failure to respond with a counter-affidavit or other sworn proof[5] establishing the basis for the exercise of personal jurisdiction defeated the exercise of long-arm jurisdiction over TMA pursuant to section 48.181(3). Similarly, the failure to bring forth any sworn proof of the commission of a tortious act by TMA in the state of Florida defeated the exercise of long-arm jurisdiction over TMA pursuant to section 48.193(1)(b). Thus, appellees failed at the first level of inquiry, namely, that there were sufficient facts to bring TMA within the ambit of Florida's long-arm statutes. That being the case, it is unnecessary for us to address the issue of whether TMA has sufficient minimum contacts with Florida to satisfy federal constitutional due process requirements. See Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089 (Fla. 3d DCA 1991).
Reversed and remanded with instructions to grant appellant's motion to dismiss.
HUBBART, J., concurs.
COPE, Judge (specially concurring).
I concur that the order under review must be reversed, either on the ground that the requirements of the long-arm statute have not been met, or alternatively, on the ground that there are insufficient minimum contacts to support jurisdiction in Florida.
It should be emphasized that the Tobacco Merchants Association is a membership organization, which has only seven members in Florida.[*] Its newsletters and publications are sent to its members. It does not market its publications or newsletters for sale to the general public. The Association will respond to unsolicited requests for information or publications from Florida residents, although such requests have been few in number.
Having seven members of a non-profit trade association within Florida does not rise to the level of doing business in Florida for purposes of sections 48.181 and 48.193, Florida Statutes (1993). Alternatively, if those activities could be said to come within the ambit of the Florida long-arm statutes, such contact is so attenuated that it does not satisfy the minimum contacts test. See Burstein v. State Bar, 693 F.2d 511 (5th Cir.1982); Golf City, Inc. v. Wilson's Sporting Goods Co., 555 F.2d 426 (5th Cir.1977); see also Milberg Factors, Inc. v. Greenbaum, 585 So.2d 1089 (Fla. 3d DCA 1991). The record does not support the assertion that a tort has been committed within the State of Florida. Consequently, I agree that the order under review must be reversed.
NOTES
[1] To a lesser extent, TMA also provides information about the tobacco industry to the general public.
[2] The trial court previously dismissed with prejudice all claims against TMA except for fraud and misrepresentation and conspiracy.
[3] Other competent sworn proof, such as depositions, a verified complaint or documents, may substitute for the affidavit to support the parties' allegations as to jurisdiction. At this stage of the proceeding, the plaintiff cannot simply rely on the unsworn allegations contained in the complaint. W.C.T.U. Ry. Co. v. Szilagyi, 511 So.2d 727, 730 (Fla. 3d DCA 1987); Hernandez v. Bass Aviation, Inc., 453 So.2d 447, 448 (Fla. 4th DCA 1984); Underwood v. University of Kentucky, 390 So.2d 433, 435 (Fla. 3d DCA 1980).
[4] The court in Venetian Salami did not create a default procedure whereby the mere filing of any affidavit by a defendant requires that a trial court rule in his favor. The defendant's affidavit must meet all requirements for legal sufficiency and must also refute all jurisdictional allegations in the plaintiff's complaint. But once this has been done, the burden shifts to the plaintiff to refute the legally sufficient affidavit.
[5] Plaintiffs had taken the deposition of Delman but the deposition transcript was not filed in the trial court for the court's use during the hearing on the motion to dismiss.
[*] The Association is a non-stock, non-profit corporation.